HANWAY (ROBINSON v.). See Case No. 11,953.

HANWAY (UNITED STATES v.). See Case No. 15,299.

HANWAY'S CASE. See Case No. 15,299.

## Case No. 6,044.

### In re HAPGOOD et al.

[2 Lowell, 200;[1] 7 Am. Law Rev. 664.]

District Court, D. Massachusetts. Jan., 1873.

BANKRUPTCY—PREFERENCE.

A payment by an insolvent debtor, of a percentage on claims of a part of his creditors which does not lessen the percentage which his other creditors will receive, is not a preference.

The petition by the Manchester Shoe & Leather Company of New Hampshire against the two defendants, doing business at Boston under the firm name of Hapgood & Co., alleged a debt due from said firm to the petitioners of about $1,000; and that said defendants, being insolvent, did, on the twenty-seventh day of December, 1872, and on the fifteenth day of January, 1873, make certain payments to two of their creditors by way of preference. The defendants filed a general denial of the acts of bankruptcy, and demanded a jury trial, which was afterwards waived, and the case was heard by the court. It appeared in evidence that the defendants met with very severe losses by the great fire of Nov. 9, 1872, and immediately afterwards took an account of their assets and liabilities, by which it appeared that they could pay about seventy-five per cent of the full amount of their debts; and, by the advice of some of their creditors, they made an offer of fifty per cent, which was accepted by nearly all the creditors, who thereupon signed a paper in which was recited the loss by fire, and the desire of the signers to assist the firm to start in business again, and by which they agreed to receive notes on an average time of three months, for fifty per cent of their respective

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

demands, in full discharge of the same. The settlement was completed; and, by the early part of January, the payments had been made, a large proportion of them in money, and to a few small creditors a round sum, which would exceed fifty per cent. There remained outstanding, according to the evidence, only the debt due to the petitioners, and one other of about $700 or $800, out of a total debt on the 10th of November of about $83,000. After the settlement was completed, the defendants had in their hands net assets above all their debts to the value of about $27,000. The petitioners, through their agent in Boston, had at one time agreed to take eighty per cent of their account in full settlement; but some dispute afterwards arose concerning the mode of liquidation, and the bargain was never carried out. They filed their petition March 20, 1873. The defendants had gone on in business during all the period after the fire; and the evidence tended to show that, after discharging their old debts, they had been and continued to be solvent. All their present debts, excepting the two above mentioned and some of the composition notes, had been contracted since the fire in the ordinary course of their business.

C. I. Reed & J. R. Bullard, for petitioners.
N. B. Bryant, for defendants.

LOWELL, District Judge. I have decided that when one creditor stands by and sees a settlement made with the others, under such circumstances that his assent to the compromise is to be presumed, he is estopped to rely on that compromise as an act of bankruptcy. In re Massachusetts Brick Co. [Case No. 9,259]. I shall probably adhere to that doctrine until a higher court has held it to be erroneous. But as this case was not argued nor placed upon the ground of the agreement concerning the eighty per cent, and the evidence upon that point may not have been fully developed, I must consider the important question, whether the payments made by the defendants in settlement with the great body of their creditors render them liable to be made bankrupts under the act. It was argued with great force and ability, that, after a trader is insolvent, there is nothing he can lawfully do by way of disposing of his property and settling with his creditors, excepting through the aid and intervention of the bankrupt court. Adding the qualification, hinted at above, that the acts complained of are done without the express or implied assent of all his creditors, the proposition is a sound one in a broad sense. That such a person cannot lawfully convey his property to trustees, even with the best intentions and the most careful provision for equality among his creditors, that he cannot do this or suffer it to be done, even with the sanction or by the decree of a state court few lawyers will be found at this time to deny. All such arrangements, however inno-

cent in intent, and however probably advantageous to the creditors, are made subject to the objection of any one of them, unless, as in a late instance, congress should make a special exception by a new statute. This is because the bankrupt law [of 1867 (14 Stat. 517)], is and must be conclusively presumed to be the best and only authoritative rule, and to provide the exclusive method and machinery for the settlement of the affairs of insolvent persons.

But this case does not bring up any transfer of property excepting payments of money, nor any thing to withdraw assets from creditors; no appointment of a private assignee chosen by the debtors to present to creditors the alternative of their management or a lawsuit. It was simply a payment, to every creditor who would accept it, of less than his whole debt. I cannot agree that this is necessarily a preference. It has been often ruled, and lately by the highest tribunal, that a payment by an insolvent to a creditor, both parties knowing the insolvency, is to be presumed to be intended as a preference. Toof v. Martin, 13 Wall. [80 U. S.] 40. The presumption is not usually said to be a conclusive one; but, if it were, the payment referred to in all these cases is a payment in full, or of a larger proportion than others will have. The definition of a preference is, a payment to one creditor which will give him an advantage over the others. or which may possibly do so. It is impossible to define it without that idea being included. Now, supposing it could be shown, beyond any doubt, that a creditor, being anxious for his money, perhaps himself in great stress, took from a debtor, in full settlement, very much less than it was certain the others would get, who is injured? Is the assignee to be permitted to say, I will recover back this five per cent to add to the ten per cent I am paying to those who made no settlement? The case that I have supposed is the case at bar. It is proved, without the slightest attempt at contradiction, that the great body of the creditors, knowing that the defendants could pay much more, agreed to take one-half of their first demands. Their purpose was to leave the defendants solvent. In my opinion, they have succeeded. Indeed, it is not denied that the defendants are actually solvent; but the argument is pressed that they are technically bankrupt, because within six months past, they, being actually insolvent, made certain payments, and that nothing can purge this stain but the lapse of time. The argument is undoubtedly a strong one. If it is sound, any one of the new creditors of this firm, having a debt to the amount of $250 or more, can put them into bankruptcy; because there is in our statute no provision that only those creditors can take advantage of an act of bankruptcy who were such when it was committed. The argument is strong; because it would not, in most cases, be possible for the court or a jury

to ascertain with any certainty that a payment by an insolvent would not or might not be a preference, and it would not do to enter into any nice calculations on the subject. But when the very case does arise, in which there is no doubt, and no calculation needed to prove that the creditors who have been paid intended to take, and in fact did take, less than they would have received in bankruptcy, and that, when they were paid, the debtors were left undoubtedly and abundantly solvent, then it would be an inversion of the law to hold that the creditor who alone has gained by this course of proceeding, who is, on the day he files his petition, able to force a full payment at law, may resort to the court of bankruptcy as a speedier and more stringent mode of obtaining such payment. It must often happen, incidentally, that the bankrupt act can be worked by a shrewd creditor to his own particular advantage, by bringing a petition when the others wish to compromise the debts, or by opposing a discharge on account of some technical fraud, and by those means forcing a payment. This cannot always be avoided; but it must be guarded against, as far as the weakness of the parties concerned will permit. If they choose to submit to exactions, it is not possible for the courts to prevent it. I do not mean to cast any imputations on the petitioners in this case. If they did not choose to give up part of their debt, they were under no obligation to do so, unless they once agreed to terms, as to which I am not fully informed. What I mean is this: In the present aspect of the case, it is really prosecuted to obtain payment in full of the petitioners' debt, which they are fully entitled to receive; but this is not the court to give it them. To test the question of preference, I asked the counsel of the petitioners if he should feel himself obliged to refuse payment in full. I did not, however, require a categorical answer to that inquiry. In my opinion, there would not be the slightest impropriety in his taking payment; and, if not, it is because the defendants are solvent, and, if they are, they were so as soon as they had made such an arrangement with their creditors that their assets were clearly and fully above the remaining liabilities, and they could go on and pay all their remaining debts as they accrued.

I do not intend to encourage any compromises but such as are full, fair, and equal. If any of the creditors who took fifty per cent were given to understand that no one should have more, or were deceived in the exhibit of assets, they might well complain. But there is no evidence of this; and the natural inference is, that any one would know there was danger that some few creditors, by refusing to come in, would be able to make better terms than the rest. In the absence of any complaint of that sort, I do not feel bound to listen to one from the party benefited.

If I should decide this case for the petitioners, I should be obliged to say that an insolvent person cannot receive a present of $25,000; for that is precisely what happened to the defendants. I am not prepared to go that length in support of a general formula. The proposition with which I began, that insolvents must, in general, invoke the intervention of the bankrupt courts, must be further modified to express the idea, that what they do in the way of payments they do at their own risk and that of the creditors who are paid, in case it should turn out that any one is or can be injured; but if there is no possible harm done, there is no act of bankruptcy.

I do not rest my decision on the ground that the particular payments mentioned in the petition were not acts of bankruptcy, while some earlier payments may have been so. In my judgment, no such act has been committed at any time. No payments were made until all the creditors were understood to have assented, though a few, like the petitioners, were to have more than fifty per cent. The agreement was to take notes; and, if notes had been given, it is perfectly evident that the effect would have been to diminish the debts one half, and leave the assets as they were, making a gift, as I have said, of about $25,000 to the firm. The agreement being completed, the firm were solvent, for the same reason; and, finding themselves able to pay the dividend in money, they made it in that way to those that wished it. Each payment was the discount of a note they had a right to insist on giving, and was a substituted payment. Not one was made until the solvency of the firm was established beyond a peradventure, by the signature or assent of all, or nearly all, the creditors to the agreement.

At the argument I expressed a doubt whether solvency could be proved, excepting by the convincing argument of a tender in court of the full amount of the petitioning creditors' debt; but as this is not a court for the collection of debts, I do not think, when the evidence is so clear, I ought to hesitate to pronounce that the solvency is proved. Indeed, if the firm had become insolvent again by a new misfortune, my decision in this case would be the same. I do not say there might not be cases in which the debts might be required to be paid before a decree of dismissal should be entered. Nor am I sure that a somewhat larger discretion over the matter of costs might not be safely and wisely intrusted to the courts.

Petition dismissed, with costs.

HAPGOOD, In re. See Case No. 6,549.

HAPGOOD (GOLDSMITH v.). See Case No. 5,522.

HAPGOOD (SAYLES v.). See Case No. 12,-420.

HAPPY RETURN, The (SWIFT v.). See Case No. 13,697.